UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNELL HILL,<br><br>    Plaintiff,<br><br>    v.<br><br>F. GONZALEZ, et al.,<br><br>    Defendants. | Case No.  1:11-cv-01071-LJO-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANT'S REQUEST FOR JUDICIAL NOTICE (ECF NO. 50);**<br><br>**AND**<br><br>**GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 48)**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff is a state prisoner proceeding pro se in this civil rights action brought pursuant to 42 U.S.C. § 1983. The matter proceeds against Defendant T. Peterson on Plaintiff's First Amendment access-to-court claim. Specifically, Plaintiff accuses Defendant of interfering with Plaintiff's ability to meet a filing deadline in connection with his petition for writ for habeas corpus when Defendant denied Plaintiff Priority Library User ("PLU") privileges.

Defendant filed a motion for summary judgment on July 6, 2015. (ECF No. 48.) Plaintiff filed an opposition. (ECF No. 53.) Defendant filed a reply. (ECF No. 54.) This matter is fully briefed and deemed submitted pursuant to Local Rule 230(*l*).

## II. DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, Defendant asks the Court to judicially notice a number of documents, including the Abstract of Judgment in People v. Hill, Monterey County Superior Court, Case No. SS031004A, filed on August 6, 2004. Def.'s Req. for Judicial Notice ("RJN"), Ex. M, ECF No. 50.

Defendant also asks the Court to judicially notice the following documents relating to Plaintiff's petition for writ of habeas corpus, filed in the Northern District of California, Hill v. Almager, Case No. 3:07-cv-03229: (1) a copy of the district court's docket, RJN, Ex. A; (2) "Order Denying Petition For a Writ of Habeas Corpus and Certificate of Appealability," filed on July 7, 2010, RJN, Ex. B; (3) Plaintiff's "Motion [for] Extension of Time to File Request [for] Certificate of Appealability," filed on August 6, 2010, RJN, Ex. C; (4) Plaintiff's "Motion of Extension of Time to File Request [for] Certificate of Appealability," filed on August 23, 2010, RJN, Ex. D; (5) "Order Terminating Motions And Instructions To Clerk," filed on February 23, 2011, RJN, Ex. E; (6) "Application for [Issuance] of a Certificate of Appealability," filed on March 26, 2012, RJN, Ex. F; and (7) "Order Denying Motion for Certificate of Appealability," filed on April 9, 2012, RJN, Ex. G.

Lastly, Defendant asks the Court to judicially notice the following documents relating to Plaintiff's appeal in the Ninth Circuit Court of Appeals, Hill v. Almager, Case No. 12-15794, following the denial of his petition for writ of habeas corpus in the district court: (1) a copy of the appellate court's docket, RJN, Ex. H; (2) "Letter After Opening a Case – Pro Se Appellants," filed on April 9, 2012, RJN, Ex. I; (3) "Order Denying the Request for a Certificate of Appealability," filed on May 15, 2012, RJN, Ex. J; (4) "Motion for Reconsideration," filed on May 31, 2012, RJN, Ex. K; and (5) "Order Denying the Motion for Reconsideration," filed on June 19, 2012, RJN, Ex. L.

The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Public records, including judgments and other court documents, are proper subjects of judicial notice. See, e.g., United States v. Black, 482 F.3d 1035, 1041 (9th Cir. 2007). Since all of the documents submitted by Defendant are subject to judicial notice, the Court will recommend that Defendant's request be granted.

### III.   UNDISPUTED FACTS

The acts that form the basis of this action occurred at California Correctional Institute ("CCI") in Tehachapi, California, where Plaintiff was an inmate housed in the Segregated Housing Unit ("SHU") for a serious rule violation, Pl.'s Dep. at 37, and Defendant Peterson was a CCI Legal Officer, Peterson Decl. ¶ 3.

#### A.   Petition for Writ of Habeas Corpus in District Court

Plaintiff is presently serving a life sentence with the possibility of parole following an April 2004 conviction. RJN, Ex. M.

On June 19, 2007, Plaintiff challenged his conviction and sentence by way of a petition for writ of habeas corpus, filed in the Northern District of California, Hill v. Vergara, Case No. 3:07-cv-3229. RJN, Ex. A. There, he alleged ineffective assistance of trial counsel in violation of the Sixth Amendment and that his consecutive sentences for multiple crimes violates his constitutional rights because the trial court relied on facts not admitted by him nor found true beyond a reasonable doubt by a jury in making the sentencing determination. See RJN, Ex. B.

On July 7, 2010, Plaintiff's petition was denied on the merits, and the district court declined to issue a certificate of appealability ("COA"). RJN, Ex. B. Plaintiff was informed that, while the district court's denial of a COA was not appealable, he may ask the appellate court to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. Id., ECF No. 50 at 26.

Plaintiff received notice of the district court's judgment on July 20, 2010. Pl.'s Dep. at 17. Based on the district court's reference to Federal Rule of Appellate Procedure 22, Plaintiff calculated that he had until August 7, 2010, to file a request for a COA with the Ninth Circuit Court of Appeals. Pl.'s Dep. at 17-18.

B. **Plaintiff's Request for PLU Status**

In 2010, scheduling for the CCI law library was based on whether an inmate had PLU or General Library User (GLU) status. Peterson Decl. ¶ 5. PLU status was given to any inmate who had either a verified court-imposed deadline or a statutory deadline within thirty days. 15 C.C.R. §3122(b)(1) ("An established court deadline may be either a court imposed deadline for an active case or a statutory deadline. Inmates who apply for PLU status based on a court imposed deadline must show documentation from the court to verify that deadline. Inmates who apply for PLU status based on a statutory deadline must identify the legal rule that compels the deadline.")

When an inmate requested PLU status, he was required to provide proof of the deadline. 15 C.C.R. §3122(b)(1) ("An established court deadline may be either a court imposed deadline for an active case or a statutory deadline. Inmates who apply for PLU status based on a court imposed deadline must show documentation from the court to verify that deadline. Inmates who apply for PLU status based on a statutory deadline must identify the legal rule that compels the deadline.")

If an inmate could not provide proof of the deadline, Peterson gave him GLU status. Peterson Decl. ¶ 6. Inmates with GLU status received library access based on library availability, custody status, and chronological order. Id.

On July 21, 2010, Plaintiff submitted a PLU Request and Declaration. Peterson Decl., Ex. A. Plaintiff asserted that he "believe[d]" that his deadline to request a COA from the Ninth Circuit was August 7, 2010, and he cited Federal Rule of Appellate Procedure 22 as the basis for his belief. Id. Plaintiff also submitted a copy of the last page of the district court's order denying his petition for writ of habeas corpus. Pl.'s Dep. at 18, 21, 23. While that order did not specify a deadline, it did cite to Rule 22 of the Federal Rules of Appellate Procedure and Rule 11 of the Rules Governing Section 2254 Cases. Opp'n, Ex. E.

Peterson was the CCI Legal Officer who evaluated Plaintiff's request. Peterson Decl. ¶ 7. As a CCI Legal Officer, Peterson was responsible for scheduling inmates' law

4

library visits; delivering legal supplies, forms and legal materials to inmates; and receiving, processing, and approving or denying inmate requests for law library services. Id. ¶ 4.

In evaluating Plaintiff's request, Peterson performed a PACER search for the case number listed on the request form to determine whether there was a court-ordered deadline. Peterson Decl. ¶ 7. Unable to verify an August 7, 2010, court-ordered deadline, Peterson denied Plaintiff's request for PLU status on July 22, 2010. Peterson Decl. ¶ 8, Ex. A. In a separate note to Plaintiff, Peterson wrote that, "According to the Court your case ... was terminated on 7-7-2010. Yes the courts say you have a right to appeal or dismiss your case. That does not constitue a court-ordered deadline." Opp'n, Ex. F. Peterson thus categorized Plaintiff as a GLU. Peterson Decl. ¶ 8.

There is no evidence that Peterson attempted to determine whether there was a statutory deadline by reviewing either Rule 22 of the Federal Rules of Appellate Procedure or Rule 11 of the Rules Governing Section 2254 Cases.

### C.     Plaintiff's Requests for a COA

On August 2, 2010, Plaintiff filed a motion for extension of time to file a request for a COA in the district court in Hill v. Vergara, Case No. 07-3229. RJN, Ex. C. Plaintiff's request was based on Peterson's denial of Plaintiff's PLU request. See id. On August 9, 2010, Plaintiff filed a second motion for extension of time.[1] Id. Ex. D.

On February 23, 2011, the district court informed Plaintiff that his two motions were construed as notices of appeal and were directed to the appellate court. RJN, Ex. E.

On March 20, 2012, Plaintiff filed a 36-page application for a COA in the district court. RJN, Ex. F. This application was summarily denied on April 9, 2012 by the district judge. Id. Ex. G.

---

[1] Both of these motions were also filed with the Ninth Circuit Court of Appeals, see RJN, Exs. C-D, but it does not appear that the appellate court took any action on them. See id. Ex. H.

On March 26, 2012, a notice of appeal was filed in the Ninth Circuit Court of Appeals.[2] RJN, Ex. H. On April 9, 2012, the Office of the Clerk for the appellate court mailed Plaintiff a packet titled "After Opening a Case – Pro Se Applicants." Id. Ex. I. Plaintiff was informed via this packet that his notice of appeal and/or request for certificate of appealability had been received. This document notified pro se applicants like Plaintiff that "[a] timely notice of appeal will be considered as a request for a certificate of appealability in this Court." Id. at 5, ECF No. 50 at 101. On April 9, 2012, the Ninth Circuit also received a copy of Plaintiff's 36-page application for a COA. RJN, Ex. H.

On May 15, 2012, the appellate court summarily denied Plaintiff's request for a COA, citing 28 U.S.C.§ 2253(c)(2), which provides that a COA will issue only if the applicant has made a "substantial showing of the denial of a constitutional right." . RJN, Ex. J.

Plaintiff then filed a 19-page motion for reconsideration, which was denied on June 19, 2012. RJN, Exs. K-L.

### D. **Plaintiff's Requests from the Law Library**

Pursuant to 15 C.C.R. § 3123(b), "[i]nmates on GLU status may receive a minimum of 2 hours per calendar week of requested physical law library access, as resources are available." Inmates who are unable to physically access the law library, including those who have "been suspended from physical access ... pending investigation of a serious rule violation," may request access to legal materials from the library staff through the law library paging process. 15 C.C.R. § 3123(c).

As CCI Legal Officer, Peterson processed these requests from inmates in the SHU for legal forms, paper, envelopes, and legal documents for in-cell study, and was responsible for overseeing fulfillment of those requests. Peterson Decl. ¶ 9.

---

[2] The record does not reveal why the notice of appeal was filed in the appellate court over one year after the district court's February 23, 2011 order.

6

1  On July 19, 2010, Plaintiff requested five forms from the law library, and he
2 received them on July 20, 2010. Peterson Decl. ¶ 10, Ex. B.

3  On July 21, 2010, Plaintiff requested ten sheets of blank paper, five envelopes,
4 legal forms, and the address for the Ninth Circuit Court. Peterson Decl. ¶ 11, Ex. C.
5 Plaintiff received these materials on July 27, 2010. Id. ¶ 11.

6  Also on July 21, 2010, Plaintiff requested three court cases for in-cell study.
7 Peterson Decl. ¶ 12, Ex. D. Plaintiff was provided with those cases on July 29, 2010. Id.
8 ¶ 12.

9  On July 28, 2010, Plaintiff requested legal materials, including ten sheets of legal
10 paper, ten sheets of blank paper, five envelopes, and legal forms. Peterson Decl. ¶ 13,
11 Ex. E. Plaintiff was provided with the materials he requested on July 29, 2010. Id. ¶ 13.

12  On August 6, 2010, one day before the deadline to file a notice of appeal or
13 request for certificate of appealability, Plaintiff gained physical access to the law library.
14 Opp'n at 9.

## IV.  LEGAL STANDARDS

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984, and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).

**V.    ANALYSIS**

    **A.    The Parties' Positions**

Defendant moves for summary judgment on the ground that Plaintiff cannot establish injury because he fully briefed his request for a COA, because his petition for writ of habeas corpus had no merit, and because Peterson did not unreasonably burden Plaintiff's meaningful access to the court. Alternatively, Defendant asserts that she is entitled to qualified immunity.

Plaintiff contends that he has shown injury because the Ninth Circuit did not consider Plaintiff's 39-page application when denying his request for a COA. Plaintiff also argues that Peterson is not entitled to qualified immunity.

    **B.    Legal Standards**

Prisoners have a constitutional right to meaningful access to the courts. Silva v. DiVittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2011). The right of access to the courts protects prisoners' right to file civil actions that have "a reasonable basis in law or fact" without "active interference" by the government. Id. at 1102-03 (internal quotation marks and emphasis omitted). The right of access to the courts "does not require prison

officials to provide affirmative assistance in the preparation of legal papers," but does prohibit states from "erecting barriers that impede the right of access of incarcerated persons," such as by depriving prisoners of the "tools necessary to challenge their sentences or conditions of confinement." Id. at 1102-03 (internal brackets and quotation marks omitted). Therefore, the Supreme Court has held that prison authorities must provide prisoners with "adequate law libraries" to enable them to pursue their claims. Bounds v. Smith, 430 U.S. 817, 828 (1977).

However, prisoners do not have a "freestanding right" to a law library. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). Law library access is relevant only as it pertains to a prisoner's right to have a "reasonably adequate opportunity to present claimed violations of constitutional rights to the courts." Lewis v. Casey, 518 U.S. 343, 351 (1996). In addition, prisoners are not guaranteed unlimited law library access. Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1991). Prisoners are subject to reasonable and necessary prison regulations regarding the time, manner and place in which library resources are used. Id. (citing Lindquist v. Idaho, 776 F.2d 851, 858 (9th Cir. 1985)).

To state a claim for denial of access to the courts, prisoners must allege an actual injury, i.e., that some official action has frustrated or is impeding plaintiff's attempt to bring a nonfrivolous legal claim. Nevada Dept. of Corrections v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011). Specifically, in a "backward-looking" access to the courts action,[3] a plaintiff must describe (1) a nonfrivolous underlying claim that was allegedly compromised "to show that the 'arguable' nature of the claim is more than hope"; (2) the official acts that frustrated the litigation of that underlying claim; and (3) a "remedy available under the access claim and presently unique to it" that could not be awarded

---

[3] The Supreme Court distinguishes between "forward-looking" access to the courts claims, in which the plaintiff alleges that official action is frustrating plaintiff's ability to prepare and file a suit at the present time, and "backward-looking" claims, in which plaintiff alleges that due to official action, a specific case cannot now be tried, or be tried with all material evidence. In a backward-looking claim, plaintiff must allege facts showing that the official action resulted in the "loss of an opportunity to sue" or the "loss or inadequate settlement of a meritorious case." Harbury, 536 U.S. at 413-14.

by bringing a separate action on an existing claim. Christopher v. Harbury, 536 U.S. 403, 416 (2002).

A missed filing deadline, by itself, is not enough to state an access to the courts claim. The plaintiff must identify his underlying claim and show that it arguably had some merit. See Flagg v. City of Detroit, 715 F.3d 165, 178-79 (6th Cir. 2013) (plaintiff is not required to prove he would have won underlying claim but for government obstruction, but must show that the claim was at least arguably meritorious and not frivolous); Brewster v. Dretke, 587 F.3d 764, 769 (5th Cir. 2009) (failure to identify issue that plaintiff would have presented to the court was fatal to his access to the courts claim); Barbour v. Haley, 471 F.3d 1222, 1226 (11th Cir. 2006) (plaintiff alleging denial of access to the courts must "identify within his complaint [ ] a 'nonfrivolous,' 'arguable' underlying claim") (quoting Harbury, 536 U.S. at 415). A plaintiff must also show how the defendant caused the deadline to be missed. See Vandelft v. Moses, 31 F.3d 794, 798 (9th Cir. 1994) (no actual injury where plaintiff requested library resources after filing deadline had lapsed on one claim and did not show how denial of access to resources for 57 days out of 365 caused plaintiff's failure to file the other claim); Entzi v. Redmann, 485 F.3d 998, 1005 (8th Cir. 2007) (affirming dismissal where the complaint did not explain how the prison's refusal to provide certain resources caused the plaintiff to miss his filing deadline); Hayes v. Woodford, 444 F. Supp. 2d 1127, 1134-35 (S.D. Cal. 2006) (no access to the courts claim where plaintiff did not explain how insufficient resources actually affected filing).

**C.    Discussion**

    **1.    Defendant's Denial of PLU Status**

Though Defendant's motion for summary judgment proceeds directly to an analysis of whether Plaintiff has established injury, the Court will first consider whether Defendant improperly denied Plaintiff PLU status.

Defendant declares that "PLU status was given to any inmate who had a verified court-ordered deadline within thirty days." Peterson Decl. ¶ 5, and that Plaintiff was not

given PLU status because Defendant was unable to verify a court-ordered deadline through a PACER search. But pursuant to 15 C.C.R. § 3122(b)(1), a court deadline can be <u>either</u> a court-imposed deadline <u>or</u> a statutory deadline. While the undisputed facts establish that Defendant attempted to verify a court-imposed deadline, there are no facts that she attempted to verify a statutory deadline, despite citation to the relevant statutes both in Plaintiff's request for PLU status and the attached last page of the district court's order denying Plaintiff's petition for writ of habeas corpus. 15 C.C.R. §3122(b)(1) ("Inmates who apply for PLU status based on a statutory deadline must identify the legal rule that compels the deadline.")

Rule 22 of the Federal Rules of Appellate Procedure does not itself specify a filing deadline, but it does refer to Rule 11 of the Rules Governing Section 2254 Cases. Regarding the time to file a notice of appeal, Rule 11 relies on Rule 4(a) of the Federal Rules of Appellate Procedure, which provides that a notice of appeal "must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Since the district court's judgment in Plaintiff's habeas action was rendered on July 7, 2010, Plaintiff's notice of appeal and/or request for COA was indeed due on or before August 7, 2010, pursuant to Rule 11 of the Rules Governing Section 2254 Cases and Rule 4(a) of the Federal Rules of Appellate Procedure.

Thus, it appears that Defendant's failure to verify a statutory deadline resulted in an improper denial of Plaintiff's request for PLU status.

### 2.  Plaintiff Did Not Suffer Actual Injury

Defendant is correct, though, that Plaintiff has not shown a genuine dispute of material fact with respect to alleged injury from Peterson's denial of PLU status. Following Peterson's denial, Plaintiff filed two motions for extension of time before his August 7, 2010, deadline; the district court construed them as timely notices of appeal. Additionally, pursuant to Rule 22(b)(1) of the Federal Rules of Appellate Procedure, in the absence of a separate request for a COA, a notice of appeal constitutes such a request. Fed. R. App. P. 22(b)(1) ("If no express request for a certificate is filed, the

notice of appeal constitutes a request addressed to the judges of the court of appeals.") Thus, Plaintiff effectively filed a timely notice of appeal and request for a COA, notwithstanding Defendant's failure to verify the statutory basis of Plaintiff's deadline.

Plaintiff counters that his injury goes beyond the filing of a timely notice of appeal and/or request for a COA. His injury, he asserts, is the frustration of his desire to use the law library facilities to research and write a brief in support of his request for a COA. It is true that the frustration of an inmate's efforts to file a brief in support of an appeal of a state court conviction can constitute an actual injury. See Hebbe v. Pliler, 627 F.3d 338, 343 (9th Cir. 2010). Defendant responds that the law library paging system provided Plaintiff with sufficient opportunity to brief his request for a COA, and that the facts show that he received materials through the paging system quickly. While the Ninth Circuit has previously described the paging system as offering only "extremely limited access to legal materials," Hebbe, 627 F.3d at 340, n.2, it is unnecessary to delve into these issues here because the undisputed facts establish that (1) Plaintiff did eventually submit a 39-page brief in support of his request for a COA on March 26, 2012, (2) the appellate court deemed that date—March 26, 2012—as the day that a notice of appeal was filed (notwitstanding the district court's February 23, 2011, order), and (3) Plaintiff's 39-page brief was before the Ninth Circuit when it rendered its decision denying a COA on May 15, 2012. Plaintiff's assumption that the brief was not considered by the appellate court is mere speculation that cannot withstand summary judgment. Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 738 (9th Cir. 1979) (ruling that a conclusory and speculative affidavit did not defeat summary judgment because it "failed to set forth any specific facts within [the declarant's] personal knowledge"). Accordingly, Defendant's motion should be granted because Plaintiff has not shown actual injury.

### 3. Plaintiff's Underlying Claims

Defendant also argues that summary judgment is warranted because the denial of Plaintiff's request for COA by both the district court and the appellate court

presumptively means that Plaintiff's arguments in his habeas petition had no merit. This argument conflates two standards.

In an access-to-court action, a plaintiff does not have to show that his claim would have ultimately been successful on the merits. Allen v. Sakai, 48 F.3d 1082, 1085 (9th Cir.1994). But he must show that it had arguable merit. Lewis, 518 U.S. at 353 n.3. In this regard, a plaintiff must show a nonfrivolous underlying claim that was allegedly compromised "to show that the 'arguable' nature of the claim is more than hope." Christopher, 536 U.S. at 416. A frivolous claim has been defined as one without arguable merit either in law or fact. See Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("'[F]rivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation."). "Examples of [frivolous claims] are claims describing fantastic or delusional scenarios...." Id. at 1833.

In contrast, a COA is issued where the appeal presents a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c). To satisfy the "substantial showing" standard, a petitioner "must demonstrate that the issues are debatable among jurists of reason[,] that a court could resolve the issues in a different manner or that the questions are adequate to deserve encouragement to proceed further." Barefoot v. Estelle, 463 U.S. 880, 893 (1983) (setting forth the standard for issuance of a certificate of probable cause, the predecessor to the certificate of appealability). "This showing requires 'something *more* than the absence of frivolity,' but something less than a merits determination ... ." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (emphasis added).

The standard for an access-to-court claim is thus lower than the standard for the issuance of a COA. Plaintiff here adequately asserted non-frivolous underlying claims, even if the district court and the appellate court ultimately declined to issue a COA. Plaintiff's right to pursue these claims is exactly the sort of litigation addressed in Lewis. Thus, Defendant is not entitled to summary judgment on this ground.

**4.     Heck v. Humphrey**

Finally, Defendant moves for summary judgment pursuant to Heck v. Humphrey,

13

512 U.S. 477 (1994). In Heck v. Humphrey, the Supreme Court held that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." 512 U.S. 477 (1994). Thus, a plaintiff cannot maintain a § 1983 action to recover damages for "harm caused by actions whose unlawfulness would render [his] conviction or sentence invalid" when his sentence and conviction have not previously been reversed, expunged, declared invalid, or called into question upon issuance of a writ of habeas corpus by a federal court. Id. at 486-87. The Supreme Court has also extended this holding to civil rights actions in which the plaintiffs seek declaratory or injunctive relief as well as damages. Edwards v. Balisok, 520 U.S. 641, 648 (1997).

Here, Plaintiff contends that he was deprived of his right to access to the courts because Defendant improperly denied him PLU status. Plaintiff maintains that, as a result of Defendant's actions, he was unable to present a timely and properly researched brief in support of his request for a COA. However, if the Court were to find that Plaintiff was denied access to the courts, or that his right to present a meaningful argument was unconstitutionally impaired, such a finding would necessarily imply the invalidity of his underlying criminal conviction. See Valdez v. Rosenbaum, 302 F.3d 1039, 1049 (9th Cir. 2002) (concluding that a Sixth Amendment claim, asserting that a "requirement that [the plaintiff] obtain permission to telephone his attorney made it practically impossible to have a telephone conversation with his attorney" was not cognizable under Heck); Cole v. Sisto, 2009 WL 2230795, at *2-4 (E.D. Cal. Jul.24, 2009) (concluding that civil rights action was barred under Heck where the plaintiff alleged that prison officials denied him access to his typewriter and to other legal tools at a time when he was representing himself on criminal charges); Pineda v. NDOC, 2009 WL 2982805, at *7–8 (D. Nev. Sept. 11, 2009) (finding claims that the defendants impeded the plaintiff's right to access to the court was barred under Heck), affirmed by 459 F. App'x 675 (9th Cir. 2011).

14

Plaintiff has not shown that his conviction and sentence have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. See Heck, 512 U.S. at 487. As such, Plaintiff's action arising out of his impaired ability to request a COA from the Ninth Circuit is barred under Heck.[4]

## VI. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Defendant's request for judicial notice (ECF No. 50) be GRANTED;
2. Defendant's motion for summary judgment (ECF No. 48) be GRANTED; and
3. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   September 28, 2015         /s/ *Michael J. Seng*
                                                                    UNITED STATES MAGISTRATE JUDGE

---

[4] In light of the recommendation that Defendant's motion for summary judgment be granted, the Court need not and will not address Defendant's qualified immunity argument.